UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAURI DENT,

          Plaintiff,

v.

MICAH MOSER,

          Defendant.

_____/

Case No. 1:21-cv-915

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by plaintiff Lamauri Dent ("Dent")
against defendant Deputy Micah Mosher (sometimes referred to as "Moser") in his personal and
official capacities.[1]  See Compl. (ECF No. 1).  While Dent is currently in the custody of the
Michigan Department of Corrections, this lawsuit arose from an incident which occurred at the
Muskegon County Jail ("Jail") on October 13, 2019.  On that date, Dent alleged that Deputy
Mosher assaulted him.  *See* Compl. (ECF No. 1).  This matter is now before the Court on Deputy
Mosher's motion for summary judgment (ECF No.  30).  Dent did not respond to the motion.

    **I.**        **Dent's complaint**

The Court construed Dent's complaint as brought pursuant to 42 U.S.C. § 1983.
*See* Order (ECF No. 4, PageID.20).  On October 13, 2019, Dent was an inmate at the Jail.  Compl.
at PageID.3.  That morning, Deputy Hasper called Dent out of his cell via teller-com [sic] between
7:00 a.m. and 11:30 a.m.  *Id*.  "As I exited my cell to receive my commissary, property tote in hand
wearing long john top and bottoms deputy Hasper told me via-teller-com to 'go back to your

_____

[1] Dent incorrectly identified defendant in the complaint as "Micah Moser".

1

fucking room and put some blues on.'" *Id*.  Dent returned from his cell with his blues on and

property tote.  *Id*.  He approached Deputy Mosher who was passing out commissary that morning.

*Id*.  Mosher was standing outside the Pod D door, the store cart in front of him, with the Pod D

doorway physically dividing them.  *Id*.

> Dent alleged as follows (in his words):

> 5.  As I arrived to deputy Moser to recive my commissary he told me to "sign the receipt" and I told him "no I will sign after I check and make sure that all of my items are in my store bag."  Deputy Moser responded "just sign the fucking paper" I responded "why are you talking to me like that we never had any problems"? Deputy Moser responded "because your pissing me off and wasting my time you should've had your blues on first time"  I responded "seriously dude that's what your mad about? Just give me something to sign the paper with."  I signed the receipt asked for my bag recived it quickly rambled through it dumped the items in my property tote, picked the tote up holding it with both hands and walked away.

> 6.  I picked my tote up holding it with both hands and walked away in a straight path from deputy Moser as if I about-faced.  Moments later I was grabbed and squeezing my right arm/shoulder (almost simotainiously deputy Moser grunted "fucking nigger") forcefully shoving me several feet forward to the stairs at his will. Once we reached the steps deputy Moser jumped on my back slamming me to the stairs causing me to hit the left side of my face on the metal steps.  Deputy Moser is now laying on my back with my right arm secured by both of his hands wrenching my arm backwards and upwards behind my back bringing me pain.  While being assulted by Deputy Moser I was asking him "why are you doing this to me? What did I do to you? You are hurting me, it's hard for me to breath."  At no time during deputy Mosers assult on me did he speak after he grunted the two words "fucking nigger".

> 7.  Deputy Hasper then came into the pod and said "Moser what are you doing"? Deputy Moser then let my arm go got from off of my back sat on the steps and put his head in his hands facing the floor.  I was then handcuffed and escorted from "POD D" and segragated in a lawyer visitation room.  The room had mirrored windows and other than the pain is when I realized that my left cheek bone was swolen. I noticed a deputy in the bubble and requested medical attention and was denied.

*Id*. at PageID.3-4.

> Some hours later, Dent was uncuffed and allowed back to his cell.  *Id*. at PageID.4.

Dent requested a grievance form and grieved the issue.  *Id*.  Later that day, Dent spoke with "shift

command" who took photos of his injury with an iPhone. *Id*. Dent denied the "shift command's" request for a statement about the assault. *Id*.

On October 14th or 15th, Dent alleged "I was called out for medical attention, the nurse acknowledged swelling to my left cheekbone and injury to my right shoulder and lower back." *Id*. at PageID.5.

Dent seeks compensatory damages from Deputy Mosher for pain, physical injury, and mental anguish. *Id*. at PageID.6.

## II.    Motion for Summary judgment

### A.    Legal standard

Deputy Mosher has moved for summary judgment for lack of exhaustion and on the merits of Dent's claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

> significant probative evidence in support of the complaint to defeat the motion for
> summary judgment. The mere existence of a scintilla of evidence to support
> plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment,

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Dent did not file a response in opposition to the motion for summary judgment.[2]

"The fact that there has been no response to a summary judgment motion does not, of course, mean

that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.

1996). The trial court is required to "intelligently and carefully review the legitimacy of such

unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion."

*Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a

motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports

an argument that the trial court must conduct its own probing investigation of the record" to

demonstrate the existence of genuine issues of material fact. *Id.* at 405.

## B.    Lack of Exhaustion

### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an

action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available

administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S.

731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may

not be able to obtain the specific type of relief he seeks in the state administrative process. *See*

---

[2] W.D. Mich. LCivR 7.2(c) states that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance

procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the

administrative review process in accordance with the deadlines and other applicable procedural

rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance

procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S.

at 218.

### 2.    Discussion

The Jail has a grievance system:

> 23.    In October 2019, when an inmate wanted to make a complaint about a specific deputy's actions, the inmate was required to fill out a written grievance form. The statement on the bottom of the grievance form outlines the procedure. (Exhibit G). Grievances concerning a specific deputy are given to that deputy for a response. A command officer also provides a response. If the inmate is dissatisfied with the response, he can send an appeal to the Jail Administrator.

> 24. Dent never provided me a completed grievance form about this incident.

> 25. I have never seen a copy of a grievance form completed by Dent about this incident.

> 26. On April 27, 2023, I confirmed that the jail has no scanned copies in its file of a grievance filed by Dent about this incident.

Mosher Decl. (ECF No. 30-6, PageID.146).

The Jail's sample inmate grievance form sets out the following instructions:

> This grievance form is to be used by inmates when there is a problem that is not solved with the Deputy on-duty. Upon completing the grievance the inmate is to turn it into the on-duty Deputy. Grievances concerning a specific Deputy will

be responded to by that Deputy unless the command officer can respond without that Deputies [sic] response. All grievances must be submitted in a timely manner. Failing to do so will result in denial of the grievance. If the inmate filing the grievance does not feel the issue has been addressed they can send an appeal to the Jail Administrator. The Jail Administrators decision will be final. A copy of all grievances will be placed in the inmate's file. Prisoners must file a grievance within 7 days precipitating an event. The Sheriff's office will then have 7 days to investigate and respond to the grievance.

Grievance Form (ECF No. 30-8, PageID.153-154).

While Dent utilized the Jail's grievance procedure on July 25, 2019[3], there is no record that Dent filed a grievance with respect to the incident alleged in this lawsuit which allegedly occurred on October 13, 2019.  At his deposition, Dent testified that he filed a grievance, had an electronic copy of it, and would send it to Deputy Mosher's counsel.  *See* Dent Dep. (ECF No. 30-4, PageID.133).[4]  However, there is no record that Dent sent counsel a copy of the grievance or that he provided a copy of it to Deputy Mosher during discovery.  When Dent failed to respond to discovery, Deputy Mosher filed a motion to compel production of documents which would include the grievance form (ECF No. 22).[5]  Dent did not respond to the motion to compel.  The

---

[3] On July 25, 2019, Dent filed a grievance stating that Deputy Temple assaulted him.  Similar to the present lawsuit, Dent stated in the grievance that Temple "called me a nigger", showed aggression, and shoved him.  *See* Grievance (ECF No. 30-7, PageID.150). The responding officer found that the use of force was necessary after Dent failed to comply with directives from Deputy Temple.  *Id*. at PageID.151.

[4] Dent gave the following testimony at his deposition:

> Q I have not seen a copy of a grievance for this incident. Is that -- is that something that you're able to send me while you're in prison?
> **A Yes.**
> Q Is that something you can -- can you send that to me? Like mail it -- or I don't know if you can e-mail, but can you send that to me so I can look at it?
> **A Yeah, I can -- I can have -- request to have it printed out and I would have to -- it would be physical. It would be through physical mail if anything.**
> Q That's fine, yeah. I would like to see it. If you could please send that to me? Because, like I said, I have a copy of one grievance but it's from a different incident. I don't have a copy of a grievance for this one.
> **A Okay.**

Dent Dep. at PageID.133 (emphasis in original).

[5] In this regard, Deputy Mosher requested Dent to:

Court granted the motion and ordered Dent to disclose the requested documents. *See* Order (ECF No. 34). There is no proof of service or other evidence that Dent provided documents as directed by the Court.

In short, while Dent was aware of the grievance procedure at the Jail, there is no evidence that he filed or exhausted a grievance against Deputy Mosher for the incident alleged in this lawsuit.  While Dent testified that he filed a grievance at the Jail and had a copy of it, there is no evidence to support this conclusory testimony.  Deputy Mosher did not receive a copy of the grievance, the Jail did not have a copy of a grievance, Dent did not voluntarily produce the copy of the grievance after his deposition, and Dent did not comply with a court order to produce documents which would include the grievance.  Based on this record, there is no evidence that Dent exhausted a grievance to support his claim against Deputy Mosher.  *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, Deputy Mosher's motion for summary judgment should be granted for lack of exhaustion.

### C.    Excessive force (individual capacity)

Furthermore, Dent's claim fails on the merits.  Dent seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal

---

2. Please produce a copy of any and all documentation, photographs, or other tangible evidence that supports your claims in any way related to your claim, your injuries, and/or your damages.

3. Please produce a copy of all exhibits you intend to introduce at trial.

Request for Production (ECF No. 22-2, PageID.71).

right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. §

1983.

> An excessive-force claim may arise under the Fourth, Eighth, or Fourteenth
> Amendments. While the Fourth Amendment's prohibition against unreasonable
> seizures bars excessive force against free citizens, *see Graham v. Connor*, 490 U.S.
> 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Eighth Amendment's ban
> on cruel and unusual punishment bars excessive force against convicted persons.
> *See Whitley v. Albers*, 475 U.S. 312, 318-19, 106 S. Ct. 1078, 89 L.Ed.2d 251
> (1986). When an individual does not clearly fall within either category, the
> Fourteenth Amendment's Due Process Clause prohibits a governmental official's
> excessive use of force.  *See Phelps v. Coy*, 286 F.3d 295, 299-300 (6th Cir. 2002).

*Hopper v. Phil Plummer*, 887 F.3d 744, 751 (6th Cir. 2018).

Based on this record, it appears that Dent was a pre-trial detainee at the Jail. Deputy

Mosher's motion has analyzed Dent's excessive force claim as that of a pre-trial detainee arising

under the Due Process Clause of the Fourteenth Amendment.  *See Kingsley v. Hendrickson*, 576

U.S. 389 (2015).  *See Coley v. Lucas County*, 799 F.3d 530, 538 (6th Cir. 2015) (pretrial detainees

cannot be subjected to the use of excessive force which amounts to punishment because they

"cannot be punished at all.") (quoting *Kingsley*, 576 U.S. at 400).  In such claims, the relevant

inquiry is whether the force purposely or knowingly used against the prisoner was objectively

unreasonable.  *Kingsley*, 576 U.S. at 396-400; *see also, Coley*, 799 F.3d at 538 (citing *Kingsley*).

> Considerations such as the following may bear on the reasonableness or
> unreasonableness of the force used: the relationship between the need for the use
> of force and the amount of force used; the extent of the plaintiff's injury; any effort
> made by the officer to temper or to limit the amount of force; the severity of the
> security problem at issue; the threat reasonably perceived by the officer; and
> whether the plaintiff was actively resisting. We do not consider this list to be
> exclusive. We mention these factors only to illustrate the types of objective
> circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 576 U.S. at 397 (internal citations omitted).  "The calculus of reasonableness must

embody allowance for the fact that [jail] officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount

of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The court's

analysis includes a "built-in measure of deference to the officer's on-the-spot judgment about the

level of force necessary in light of the circumstances of the particular case." *Mullins v. Cyranek*,

805 F.3d 760, 766 (6th Cir. 2015) (internal quotation marks omitted). Ultimately, the court's focus

is not on the extent of the plaintiff's injury, but "whether gratuitous violence has been inflicted."

*Coley*, 799 F.3d at 539 (internal quotation marks omitted).

       As discussed, Dent alleged, among other things: that Deputy Mosher shoved Dent

"several feet forward to the stairs;" that Mosher jumped on Dent's back; that Mosher slammed

Dent into the stairs; and that Mosher wrenched Dent's hands and arm "backwards and upwards"

to inflict pain. Compl. at PageID.3-4. In his declaration, Deputy Mosher stated that he did not

purposely or knowingly use force to push or shove Dent and that he restrained Dent after they fell

because the situation presented a security concern:

> 11. I ordered Dent to return to his room, several times. Dent continued to complain while he slowly walked toward his room, stopping to look over his shoulder to continue to complain and argue. His behavior continued until he responded to one of my commands with words like "you are going to have to make me".
>
> 12. At that point, I determined Dent needed to be escorted back to his room to end his disruptive behavior and allow me to continue handing out commissary.
>
> 13. I slid the commissary cart away from the door. These are old, lightweight carts that have been used for decades. They slide very easily across the floor.
>
> 14. I entered into the pod. By that time, Dent had taken a few steps away from the pod door toward the middle of the common area.
>
> 15. I took hold of the back of Dent's uniform to direct him back to his room.
>
> 16. The next thing I know, we both fell to the ground. Dent landed on the stairs. I landed behind and on top of him. I do not know how or why this happened.
>
> 17. I did not push or shove Dent. I did not jump on his back.

18. I decided to restrain him until back up arrived. I did not know what caused us both to be on the ground. It is a security concern when a deputy falls onto the ground with inmates present.

Mosher Decl. (ECF No. 30-6, PageID.143-144).

Deputy Mosher's declaration is consistent with the surveillance video of the incident from which it appears: that Dent was slowly walking back from the commissary; that Dent came out of the commissary walking toward plaintiff; that Dent and Mosher came into contact; that either Dent or Mosher lost their balance with Dent's footwear coming off; that Mosher appeared to fall on top of both Dent and the stairs; that Mosher lifted himself up and restrained Dent for a few seconds; and that another jail officer took control of Dent. *See* Exh. B (ECF No. 33, video at 2:22-3:24). The video also shows that other inmates were present in the common room when the incident occurred. *Id*. The presence of these inmates supports Mosher's statement that his vulnerable position after he fell created a security concern.

Medical records indicate that Dent had minimal injuries and then refused medication. Dent saw a nurse at the Jail on October 13, 2019, at which time he was examined and offered ice for his face and ibuprofen for his pain:

At approx. 1300, inmate requested to be seen, stated he was injured during an altercation with an officer. Assessed inmate outside of D pod door. Stated he hit his cheek on the stairs. A pinky-sized (length and width) reddened mark laterally across L zygomatic bone. No swelling or signs of fracture on observation or palpation of area. State his back is also hurting. No observable marks on back. Ibuprofen BID started. Stated inmate could also have ice for face if requested. Inmate seemed content with treatment plan.

Medical Record (ECF No. 30-9, PageID.160).

At 4:34 p.m. on October 13, 2019, Dent was prescribed ibuprofen to use three times a day for 10 days. *Id*. at PageID.158. However, Dent refused ibuprofen at 8:00 a.m. on October 15, 2019, and the medication was discontinued. *Id*. at PageID.156.

10

Plaintiff met with staff on October 24, 2019, who reported as follow:

> Saw inmate at approx. 0930 at the request of JA after speaking to inmate's mother. Seen at pod door. I asked inmate what physical issues he had in regards to a recent confrontation with a deputy, and he stated that he did not want to speak to me because this writer and the accompanying deputy "work for the county." Inmate was very argumentative and confrontational during this interview. Inmate stated that he was on pain medication but refused it because "why am I going to pay for it when one of YOU (pointing at accompanying deputy) assaulted me?!" Inmate agreed to be seen by the jail doctor 10/25/19.

*Id*. at PageID.159.  The doctor's notes from October 25, 2019 are illegible.  *Id*. at PageID.161. However, there is no record of additional treatment.

Viewing the evidence in the light most favorable to Dent, this record does not establish that Deputy Mosher engaged in objectively unreasonable force by inflicting gratuitous violence against Dent in violation of the Fourteenth Amendment.  Accordingly, Deputy Mosher's motion for summary judgment should be granted as to this claim.[6]

### D.    Excessive force (official capacity)

As discussed, Dent also sued Deputy Mosher in his official capacity.  Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent.  *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  *See also*, *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") (citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 68 (1989)).

---

[6] The Court notes that Deputy Mosher also sought summary judgment on the affirmative defense of qualified immunity.  *See* Defendant's Brief at PageID.111-113.  Because there was no constitutional violation, it is unnecessary to address Deputy Mosher's arguments regarding this affirmative defense.

A local governmental entity, such as a municipality or a county, "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). As this Court explained:

> Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. . .

*Taghon v. Bailey*, No. 1:20-cv-373, 2020 WL 2315748 at *4 (W.D. Mich. May 11, 2020).

Here, Dent's official capacity claim against Deputy Mosher fails for two reasons. First, Dent did not allege or identify any Muskegon County policy or custom which gave rise to the alleged constitutional violation.   Second, because Deputy Mosher did not violate Dent's constitutional rights (*see* § II.B., *supra*), there is no basis to hold Muskegon County liable under § 1983.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (municipality has no liability if the plaintiff suffered no constitutional injury at the hands of the municipality's police officer); *Epps v. Lauderdale County, Tennessee*, 45 Fed. Appx. 332, 334 (6th Cir. 2002) (where "the individual liability claims were without merit . . . no underlying constitutional violation existed for which the municipality could be held responsible").  Accordingly, Deputy Mosher's motion for summary judgment should be granted as to the official capacity claim.

### III.    Recommendation

For these reasons, I respectfully recommend that defendant Deputy Mosher's motion for summary judgment (ECF No. 30) be **GRANTED**.


Dated:  December 20, 2023                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).